AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 21- 221M
A SAMSUNG GALAXY A01 SMARTPHONE, SERIAL )
NUMBER R9PN50WH28J )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ District of ___ Delaware ___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252A(a)(2 and (a)(5) | Distribution of child pornography; possession of child pornography. |

See affidavit in support of search warrant.

**FILED**

**AUG - 5 2021**

**U.S. DISTRICT COURT DISTRICT OF DELAWARE**

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days *(give exact ending date if more than 30 days:* ___ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Linh Phung
*Applicant's signature*

Linh Phung, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___ telephone ___ *(specify reliable electronic means)*.

Date: 08/04/2021

*Judge's signature*

City and state: Wilmington, Delaware     Hon. Mary Pat Thynge, Chief U.S. Magistrate Judge
*Printed name and title*

Confirmed identify and signature of agent on 8/5/2021

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: <br> A SAMSUNG GALAXY AO1 <br> SMARTPHONE, SERIAL NUMBER <br> R9PN50WH28J | Case No. 21- 221 M |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Linh Phung, a Special Agent with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being first duly sworn, hereby depose and state as follows:

INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure to search the following: a Samsung Galaxy AO1 Smartphone, serial number R9PN50WH28J (hereinafter the "TARGET DEVICE"), described in Attachment A, for evidence described in Attachment B.

2. I have been a Special Agent with the FBI since May 2006. I am currently assigned to the Maryland Child Exploitation and Human Trafficking Task Force in the Baltimore Division and have been assigned to investigate federal violations concerning child pornography and the sexual exploitation of children. During my employment with the FBI, I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations. In addition, I have also received training regarding the use of the internet and digital communications as they pertain to federal investigations. I have participated in the execution of numerous search warrants, of which the majority have involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for

1

computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses. I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts and other online communication accounts related to child exploitation and/or child pornography. In the course of my employment with the FBI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

3. As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4. There is probable cause to believe that the TARGET DEVICE contains evidence of violations of Title 18, United States Code, Section 2252A(a)(2) (distribution of child pornography); and Title 18, United States Code, Section 2252A(a)(5)(B) (possession of child pornography) (hereinafter the "SPECIFIED FEDERAL OFFENSES").

5. The statements in this affidavit are based in part on information and reports provided by the FBI and Delaware Probation and Parole, and on my experience and background as a Special Agent of the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of the SPECIFIED FEDERAL OFFENSES are located within the TARGET DEVICE.

## SPECIFIED FEDERAL OFFENSES

6. As noted above, this investigation concerns alleged violations of the following:

    a. Title 18, United States Code, Sections 2252A(a)(2) prohibit a person from knowingly receiving or distributing any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any mean, including by computer.

    b. Title 18, United States Code, Sections 2252A(a)(5)(B) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

7. The following definitions apply to this Affidavit and Attachment B:

    a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

    b. "Chat room," as used herein, refers to the ability of individuals to meet in one location on the Internet in order to communicate electronically in real-time to other individuals. Individuals may also have the ability to transmit electronic files to other individuals within the chat room.

    c. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

    d. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image of picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction

involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

      e.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, tablets, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

      f.      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

      g.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

      h.      "Hashtag," as used herein, refers to a word or phrase preceded by a hash or pound sign (#), which is used to identify messages or groups on a specific topic.

      i.      The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

      j.      "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers (ISPs)

control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

   k. "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

   l. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

   m. "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

   n. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

   o. "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

   p. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

   q. A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

   r. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POESSES AND COLLECT CHILD PORNOGRAPHY AND HOW USE OF COMPUTERS AND THE INTERNET RELATE TO THE POSSESSION OF CHILD PORNOGRAPHY

8. Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned individuals who utilize the internet to view and receive images of child pornography are often individuals who have a sexual interest in children and in images of children, and there are certain characteristics common to such individuals, including the following:

   a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

   b. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

   c. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

   d. Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer, cell phone or tablet, and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online stores, email accounts or other online communication accounts, to enable the individual to view the collection, which is highly valued by the individual.

   e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of

       individuals with whom they have been in contact and who share the same interests in child pornography. This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

    f.    Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

9.    Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

    a.    Computers, smartphones, and the internet are all methods used by child pornography collectors and those with an interest in sexual encounters with children to interact with and sexually exploit children.

    b.    Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e. "Instant Messaging"), easy access to the internet, and online file sharing and storage, electronic devices are the preferred method of distribution and receipt of child pornographic materials.

    c.    The internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. Collectors and distributors of child pornography as well as those with an interest in sexual contact with children use online resources to retrieve and store child pornography and to communicate with children, including services offered by internet portals such as AOL Inc., Yahoo! And Google, Inc., Facebook, Dropbox, Instagram, and others. The online services allow a user to set up an account with a remote computing service that provides email services, file exchange services, messaging services, as well as electronic storage of computer files in a variety of formats. A user can set up an online storage account from any computer with access to the internet, including (for example) a smart phone. Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data.

    d.    In my recent investigative experience, as well as recent discussions with law enforcement officers, I know the individuals who collect child pornography are using email accounts, online storage accounts, and other online

communication accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

10. Modern communications, including through smart phones and computers equipped with communications applications like Facebook Messenger, WhatsApp, and many others, allow near instantaneous contact through voice, text, video, and images. Individuals with a sexual interest in children, whether or not they are also interested in child pornography, make use of these modern communications systems to contact children, including for the purpose of initiating sexual encounters with children.

## KIK AND MEGA

11. Kik is a free instant messenger application for mobile devices in which users can send text messages, pictures, and videos to other users. Users can communicate directly with an individual or with multiple users in a group chat. When signing up for a Kik account, a user supplies an email address (which does not need to be verified), a unique username, and a display name that is seen when chatting with others. Kik may retain images and video content sent and received by users for approximately 30 days. Kik may also retain a log of all the messages that a user has sent and received, including senders' and receivers' usernames; however, the log does not include the actual message that was sent. The text of the chat messages sent may be stored locally on the user's devices.

12. MEGA refers to an online storage medium accessed from a computer, electronic storage device, web browser, or one of MEGA's software applications. As an example, online storage mediums such as MEGA make it possible for the user to have access to saved files without the requirement of storing said files on their own computer or other electronic storage device. MEGA is an "offsite" storage medium for data that can be viewed at any time from any device

capable of accessing the internet. Users can store their files on MEGA and avoid having the files appear on their computer. Anyone searching an individual's computer that utilizes MEGA would not be able to view these files if the user opted only to store them at an offsite such as MEGA. These are often viewed as advantageous for collectors of child pornography in that they can enjoy an added level of anonymity and security.

## PROBABLE CAUSE

13. From on or about July 12, 2021 to July 20, 2021, an online undercover Task Force Officer (the "UC") communicated with Kik user "melv19702," who had a display name of "Mel J." The UC communicated with "Mel J" in a private Kik group known to the UC as a group where people meet to discuss and exchange sexually explicit images and videos of children. During the course of the chat conversations, the UC told "Mel J" that he was sexually active with his purported eight-year-old daughter. The UC also sent non-pornographic images of his purported daughter to "Mel J."[1]

14. "Mel J" told the UC that he was in jail for four years for child pornography and that he was caught on Kik. "Mel J" also told the UC that he was currently still on probation and that his probation officer did not know about his burner phone. Excerpts from the conversations between Mel J and the UC are depicted below. The first excerpt is from a conversation that took place on Kik. The second excerpt is from a conversation that took place via text message. "Mel J" provided the UC with his phone number via Kik. Both conversations took place on July 12, 2021.

### Excerpt #1

UC: Lol, what's the dirtiest u done lol? I'm no limits and not a cop so I'm safe
Mel J: Lol had a 11yo fuck her male dog and get knotted in her ass

---

[1] The images the UC sent did not depict a real child.

9

UC:     Mmmm on vid
UC:     I cum and play with my 8 yo Dau when she sleeps
Mel J:  Nice and na unfortunately I lost it when I went to jail
UC:     I had a close call
UC:     Myself, what u get busted for
[*UC sent a picture but it was black*]
Mel J:  Cp

UC:     So I almost got busted five years ago my ex caught me fingering daughter. How u get busted
Mel J:  Sting here on kik
UC:     Damn really
UC:     Did you get off
Mel J:  No served 4 years I'm still on probation for it

**Excerpt #2**

Mel J:  Yeah but when will that be? Lol the only reason I lost my job cuz of probation
UC:     Ah man that sucks
UC:     How much longer you have
UC:     It wasn't the fucking feds was it , my ex called on me accusing me of touching my daughter. They did an investigation , scared the fuck out of me but they could not prove it so I got lucky
Mel J:  Little over 2 years
UC:     Ok
Mel J:  Yeah you did lol na it was state
UC:     Ah ok lol , yeah scared the piss out of me
UC:     Your probation doesn't check phone does he lol, don't want to get busted
UC:     Love your vids though man ,
Mel J:  He dont know I got this one
UC:     Nice !
Mel J:  Lol gotta love burners
UC:     Does your roommates know lol ; and yes for sure
Mel J:  Yeah they do lol they dont care

15.     On July 12, 2021, "Mel J" sent the UC via Kik approximately four video files depicting child pornography and on July 13, 2021, "Mel J" sent the UC one image file, via text message, depicting child pornography. Your affiant reviewed each of the files and determined that

10

the files contained visual depictions of a minor engaging in sexually explicit conduct, and thus constitute child pornography under 18 U.S.C. § 2256(8). The four files are described as follows:

    a. **"667fed65-3960-4fb4-8529-0119ab2f587b.mp4"** – Video length was approximately one minute and 10 seconds. Video depicted a nude, prepubescent female being vaginally penetrated by a penis.

    b. **"427ea064-d251-42a7-997c-a5b1e31fbe1c.mp4"** – Video length was approximately 20 seconds and depicted a prepubescent boy inserting his penis into an adult female's vagina.

    c. **"8d522e97-5a71-4ea1-bce6-2e6ea73d617d.mp4"** – Video length was approximately 48 seconds and depicted a nude female who appeared to be approximately 12 to 13 years old. The female appeared to be lying in the car and was vaginally penetrated by an adult male penis and was slapped in the face by the male.

    d. **"7B8E0B2A-4F1E-4B3E-A98E-648E936F55E0_123_1.JPEG"** – An image depicting a nude, prepubescent female lying on her back with her legs spread apart exposing her vagina.

16. On or about July 20, 2021, "Mel J" sent the UC a MEGA web link via text message. Upon receipt, the UC clicked on the link and observed approximately 600 files depicting child pornography. As of July 22, 2021, the web link was no longer valid.

17. Investigators were able to locate, through open source queries, the Google account associated with the handle "melv19702," which is the Kik username of "Mel J." On July 13, 2021, a subpoena was served on Google. Google responded with information that the subscriber to the account is Melvin Janvier, III, registered to 103 Dawes Court, Newark, Delaware 19702.

18. Investigators conducted a search of the Delaware online sex offender registry and learned that Melvin Janvier, III (hereinafter "JANVIER") is a registered sex offender. The

11

photograph of JANVIER from the online registry is very similar to the photo displayed by Kik account "melv19702."

19. Your affiant immediately contacted the probation officer responsible for JANVIER from Delaware Probation and Parole and advised the officer that JANVIER may be violating his supervised release by being in possession of a phone not authorized by probation.

20. The probation officer advised your affiant that JANVIER had been under his supervision since September 2019 and on October 16, 2018, JANVIER signed the "Sex Offender Special Conditions," which stated JANVIER was not allowed to have a device with access to the Internet.

21. On or about July 20, 2021, Delaware Probation and Parole conducted a search at JANVIER's residence for evidence related to the violation of his conditions of supervision. Upon arrival, the probation officer asked JANVIER if he was in possession of any device that may access the Internet and JANVIER responded that he had a smartphone, which was a Samsung Galaxy AO1 smartphone, serial number R9PN50WH28J, (the "TARGET DEVICE"). At that time, JANVIER was placed under arrest for violating his terms of supervised release.

22. JANVIER provided the passcode to the TARGET DEVICE to his probation officer. The officer observed an open chat conversation on the TARGET DEVICE that appeared to be with the UC. The chat conversation reflected the UC's phone number. The probation officer also observed an image of a prepubescent female with her legs spread apart with no clothes on. That image appears to be the same as the image "Mel J" sent the UC on July 13, 2021.

23. JANVIER admitted to having the TARGET DEVICE for the purpose of viewing child pornography. JANVIER stated that he had the TARGET DEVICE for under a year, but only viewed child pornography for a few months.

24. The TARGET DEVICE is currently in the possession of Delaware Probation and Parole, located at 314 Cherry Lane, New Castle, Delaware 19720. Based on my training and experience, I know that the TARGET DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET DEVICE first came into the possession of Delaware Probation and Parole.

## CONCLUSION

25. Based on the foregoing, there is probable cause for this Court to issue the requested warrant.

Respectfully submitted,

*/s/ Linh Phung*
Special Agent Linh Phung,
Federal Bureau of Investigation

Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this ＿5th＿ day of August, 2021.

_____
The Honorable Mary Pat Thynge
Chief United States Magistrate Judge

13

## ATTACHMENT A

*Property to Be Searched*

This warrant applies to information associated with a Samsung Galaxy A01 Smartphone, serial number R9PN50WH28J (the "TARGET DEVICE"). The TARGET DEVICE is currently in the custody of Delaware Probation and Parole, located at 314 Cherry Lane, Newark, Delaware 19720.

## ATTACHMENT B

### *Items to be Seized*

1. All records on the device described in Attachment A (the "TARGET DEVICE") that relate to violations of 18 U.S.C. § 2252A(a)(2) (distribution of child pornography) and 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) including:

   b. Any and all child pornography as defined under 18 U.S.C. § 2256(8);

   c. Any and all child erotica, which includes materials or items that are sexually arousing to persons having a sexual interest in minors but are not necessarily child pornography, as defined under 18 U.S.C. § 2256(8), such as children in sexually provocative poses or partially/scantily clad;

   d. Any and all notes, documents, records, or correspondence pertaining to the possession, transport, distribution, receipt, or production of child pornography as defined under 18 U.S.C. § 2256(8), such as communications with individuals seeking to distribute, produce or receive child pornography;

   e. Any and all data that could be used to identify persons, dates/times, and devices involved in transmitting, transporting, receiving, or possessing, through interstate commerce including by U.S. Mails or by computer, any child pornography as defined under 18 U.S.C. § 2256(8), as well as any and all data that could be used to identify the victims of those crimes (such as photos, names, addresses, etc.);

   f. Any and all records, documents, invoices, and materials that concern any accounts with any Internet Portal, such as Google, Inc., Microsoft, Facebook, Dropbox, etc.;

   g. Any visual depictions of minors;

   h. Evidence indicating the user's state of mind as it relates to the crimes under investigation within this warrant – such as comments or communications evincing an interest in child pornography, child erotica, or sexual activities with a child;

   i. Credit card information, bills, and payment records associated with subscriptions/use of Internet Portals;

   j. Evidence of routers, modems, and network equipment used to connect the TARGET DEVICE to the internet and/or other TARGET DEVICE (for example, to show a TARGET DEVICE was used to transport child pornography to another device, such as a home computer);

k. Any and all electronic diaries, notebooks, notes, and other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(8);

l. Any and all records relating to persuading, inducing, enticing, or coercing any minor to engage in sexual activity in violation of the law;

m. Information or records pertaining to affiliation, visitation, or use of any child exploitation websites;

n. Any and all records related to the location of the user(s) of the devices.

o. For the TARGET DEVICE:

  a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

  b. Evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

  c. Evidence of the lack of such malicious software;

  d. Evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence;

  e. Evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Device;

  f. Evidence of the times the Device was used;

  g. Passwords, encryption keys, and other devices that may be necessary to access the Device;

  h. Documentation and manuals that may be necessary to access the Device or to conduct forensic examination of the Device;

  i. Contextual information necessary to understand the evidence described in this attachment.